FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 05, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLARINDA G.,[1] | No. 1:25-CV-03134-MKD |
| Plaintiff, | ORDER REVERSING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 10, 15** |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' briefs. ECF Nos. 10, 15. D. James Tree represents Plaintiff. Special Assistant United States Attorney Benjamin Groebner Defendant. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court reverses the

---

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

Commissioner's decision and remands the case for additional administrative proceeding pursuant to sentence four of 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Title XVI supplemental security income benefits on December 1, 2021, alleging disability beginning May 8, 2019.  Tr. 97, 245-51.  The application was denied initially and upon reconsideration.  Tr. 165-69, 171-74.  An Administrative Law Judge (ALJ) held a hearing on April 30, 2024, Tr. 37-74, and issued an unfavorable decision on July 17, 2024.  Tr. 14-36.  The Appeals Council denied review on June 18, 2025.  Tr. 1-6.  Plaintiff appealed this final decision on August 14, 2025.  ECF No. 1.

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted).  "Substantial evidence" means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation marks and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less

ORDER - 2

than a preponderance." *Id.* (quotation marks and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*. (citation omitted).  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation marks and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

ORDER - 3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

ORDER - 4

this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

ORDER - 5

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 1, 2021, the application date.  Tr. 19.

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes mellitus, hypertension, substance use disorders,

ORDER - 6

major depressive disorder, anxiety disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and panic disorder.  Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 20.

The ALJ then concluded that Plaintiff had the RFC to perform light work that:

> does not require more than occasional stooping or climbing; that does not require more than frequent balancing, kneeling, crouching, or crawling; that does not require concentrated exposure to hazards; that is the same tasks over and over; that follows a set routine, and that does not require more than occasional, superficial interaction (such as "good morning" or "here is the item") with coworkers or the general public.

Tr. 22-23.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, to include basket filler, egg sorter, and garment sorter.  Tr. 30-31.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the application date through the date of the decision.  Tr. 32.

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ erred in fashioning the RFC; and

4.  Whether the ALJ erred at step five.

ECF No. 10 at 2.

**DISCUSSION**

**A. Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

ORDER - 8

medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

ORDER - 9

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (emphases added).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.*  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has

ORDER - 10

examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ improperly assessed two medical opinions. ECF No. 10 at 11-14.

### 1. Dr. Genthe

Dr. Genthe examined Plaintiff on September 28, 2021, opined, among other things, Plaintiff had marked limitations understanding, remembering, and persisting in tasks by following detailed instructions; adapting to changes in a routine work setting; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal workday and workweek without interruptions from psychologically based symptoms, and assessed Plaintiff's severity level as marked. Tr. 348. The ALJ found the opinion unpersuasive. Tr. 28

Among other reasons, the ALJ discounted Dr. Genthe's opinions as "inconsistent with and unsupported by the medical evidence," noting "[t]he mental health treatment records in late 2021 to early 2022 inconsistently show that [Plaintiff's] longitudinal mental status examinations were largely within normal

ORDER - 11

limits." Tr. 28.  This finding is legally sound, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reasonably reject doctors' opinions when they are inconsistent with or contradicted by the medical evidence); *Woods*, 32 F.4th at 792-93, and substantial evidence supports it, *see, e.g.*, Tr. 365 (October 22, 2021, treatment note indicating full affect, clear speech, and perception, thought content, cognition, insight, and judgment as within normal limits); Tr. 374-75 (August 16, 2021, treatment note indicating full affect, clear speech, logical thought process, and perception, thought content, cognition, insight, and judgment as within normal limits); Tr. 397 (April 29, 2021, treatment note indicating full affect, clear speech, and perception, thought content, cognition, insight, and judgment as within normal limits); Tr. 407 (April 20, 2021, treatment note indicating full affect, clear speech, and perception, thought content, cognition, insight, and judgment as within normal limits).

Because the ALJ properly discounted the opinion on this ground, the Court need not address the balance of the ALJ's stated reasons for discounting the opinion.  Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

ORDER - 12

*2. Dr. Morgan*

Dr. Morgan examined Plaintiff on August 10, 2023, and opined, among other things, Plaintiff had a series of marked limitations—including asking simple questions or requesting assistance, communicating and performing effectively in a work setting, and maintaining appropriate behavior in a work setting—and assessed Plaintiff's severity level as marked.  Tr. 623.  The ALJ found Dr. Morgan's opinion not persuasive.  Tr. 29.

Among other reasons, the ALJ discounted the opinion as internally inconsistent, reasoning that "the opined marked limitations are inconsistent with and unsupported by [Plainitff's] demonstrated abilities on examination, which was almost entirely normal."  Tr. 29.  This finding is legally sound, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may discount a doctor's opinion when it is inconsistent with or unsupported by the doctor's own clinical findings), and substantial evidence supports it.  In his mental status examination, the doctor assessed normal speech, cooperative behavior and attitude, and normal affect.  Tr. 625.  The doctor also assessed Plaintiff's thought process and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought, and insight and judgment as all within normal limits.  Tr. 625-26.  The ALJ reasonably found the doctor's assessment conflicted with his stated opinion.

ORDER - 13

The ALJ also discounted Dr. Morgan's opinion as inconsistent with the record.  Tr. 29.  For the reasons described above, in the context of Dr. Genthe's opinion, the ALJ did not err by discounting Dr. Morgan's opinion on this ground.

Because the ALJ properly discounted the opinion on these grounds, the Court need not address the balance of the ALJ's stated reasons for discounting the opinion.  Any inclusion of erroneous reasons was inconsequential and therefore harmless.  *See Carmickle*, 533 F.3d at 1162.

**B. Plaintiff's Testimony**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 10 at 4-11.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

ORDER - 14

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and footnote omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7)

ORDER - 15

any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 24.

The ALJ offered numerous reasons to discount Plaintiff's testimony, at least one of which the Court finds well supported.  Among other reasons, the ALJ discounted Plaintiff's testimony as inconsistent with the objective medical evidence, to include mental status examinations.  Tr. 24-26.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Carmickle*, 533 F.3d at 1161).  The ALJ did not err and relied on substantial evidence—including, as discussed above, a series of mental status examinations—by discounting Plaintiff's testimony on this ground.

Because the ALJ gave at least one valid reason for discounting Plaintiff's testimony, the Court need not address the balance of the ALJ's stated reasons for

ORDER - 16

discounting Plaintiff's testimony.  Any inclusion of erroneous reasons was inconsequential and therefore harmless.  *See Carmickle*, 533 F.3d at 1162.

**C. RFC**

Because the ALJ properly assessed the medical evidence and Plaintiff's testimony, as discussed above, and the Court otherwise discerns no error, the Court concludes the ALJ did not err in fashioning the RFC.  *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (an RFC must include all of the claimant's functional limitations supported by the record).

**D. Step Five**

At step five, the Commissioner bears the burden of establishing that the claimant can perform other work existing in significant numbers in the national economy. 2 0 C.F.R. § 416.960(c)(2).  The Commissioner may satisfy this burden through vocational expert testimony identifying representative occupations that a person with the claimant's residual functional capacity can perform.  *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

Where a claimant challenges the vocational expert's job-number testimony by submitting competing evidence, the ALJ must determine whether that evidence is "significant and probative."  *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023).  If so, the ALJ must address the discrepancy and resolve the inconsistency between the competing job-number estimates.  *Id.*; *White v. Kijakazi*, 44 F.4th 828,

ORDER - 17

837 (9th Cir. 2022); *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017).  The Ninth Circuit recently reaffirmed this framework, holding that where a claimant presents significant and probative countervailing job-number evidence, the ALJ must engage with that evidence and resolve the conflict in the record.  *Powley v. Bisignano*, No. 24-4063, 2026 WL 760230, at *2, *5-*6 (9th Cir. Mar. 18, 2026).

Here, the ALJ relied on vocational expert testimony to conclude that Plaintiff could perform work existing in significant numbers in the national economy.  The vocational expert testified that an individual with the assessed residual functional capacity could perform the occupations of basket filler, egg sorter, and garment sorter, identifying approximately 202,000, 62,000, and 125,000 jobs nationally, respectively.  Tr. 66.  The ALJ adopted this testimony at step five.

However, Plaintiff directly challenged the vocational expert's job-number testimony at the administrative hearing.  Plaintiff's counsel questioned the methodology underlying the vocational expert's estimates and identified substantially lower job number figures derived from Job Browser Pro for the same occupations.  Tr. 69-71.  Specifically, Plaintiff's counsel noted that Job Browser Pro yielded approximately 102 jobs for egg sorter, 154 jobs for basket filler, and 15 jobs for garment sorter.  Tr. 71.  The vocational expert acknowledged reliance on Bureau of Labor Statistics group data and conceded that Job Browser Pro is an

ORDER - 18

accepted source but did not reconcile the discrepancy between the competing methodologies or job number estimates.  Tr. 69-71.

The ALJ permitted Plaintiff to submit additional evidence following the hearing.  Tr. 72.  Plaintiff thereafter submitted written job-number evidence derived from Job Browser Pro reflecting substantially lower job-number estimates for the same representative occupations.  *See* Tr. 333-39.  This evidence was tied to the same Dictionary of Occupational Titles codes identified by the vocational expert and relied on a source recognized as commonly used in vocational analysis.  *See White*, 44 F.4th at 837 (recognizing Job Browser Pro as a source "frequently relied on by the SSA").  Evidence produced using such sources and methodologies is probative.  *Powley*, 2026 WL 760230, at *6-*7.

The discrepancy between the vocational expert's testimony and Plaintiff's competing job number estimates is also significant. *Compare* Tr. 66 (identifying tens of thousands to hundreds of thousands of jobs nationally), with Tr. 333-35 (reflecting dramatically lower figures).  In this context, significance turns on the magnitude of the difference between the competing estimates.  *Powley*, 2026 WL 760230, at *8.  Plaintiff's competing evidence reflects a materially different estimate of the number of jobs available for the identified occupations, creating a meaningful conflict in the record.

ORDER - 19

The ALJ acknowledged Plaintiff's competing job number evidence but rejected it, reasoning that the vocational expert relied on an accepted methodology, that different methodologies may yield different results, and that the vocational expert's testimony was more persuasive than Plaintiff's counsel's analysis. Tr. 31-32. This reasoning is insufficient. As the Ninth Circuit recently explained, when the record contains conflicting job number evidence derived from accepted sources, it is not enough for an ALJ to rely on the vocational expert's experience, credentials, or chosen methodology. *Powley*, 2026 WL 760230, at *8 (explaining that reliance on an expert's methodology or experience "d[oes] nothing to address the conflicts between the data"). Nor is it sufficient to observe that different methods may produce different results. The ALJ must instead meaningfully engage with the competing evidence and resolve the discrepancy. *Id*.

Here, the ALJ did not do so. The decision does not explain why the vocational expert's job number estimates were accepted over Plaintiff's competing estimates derived from an accepted methodology. Nor does the decision reconcile the stark numerical disparity between the two sets of figures. Rather, the ALJ effectively deferred to the vocational expert's testimony based on the expert's qualifications and general reliability.

Because Plaintiff presented evidence that is both significant and probative, the ALJ was required to resolve the conflict between the competing job number

ORDER - 20

estimates.  The failure to do so constitutes legal error, and the step five finding is not supported by substantial evidence.  Remand is required for further administrative proceedings so that the ALJ may properly evaluate the competing job number evidence and determine whether work exists in significant numbers in the national economy that Plaintiff can perform.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 10**, is **GRANTED**.

2. Defendant's Brief, **ECF No. 15**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

ORDER - 21

DATED May 5, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 22